## Joe Harrold v. The State.

### No. 2812. Decided June 8, 1904.

**1.—Theft—Accomplice—Indictment.**

An indictment charging C. with theft of horses which he obtained by virtue of a contract of hire and which he afterwards fraudulently converted to his own use, and which charges H. as an accomplice by fraudulently advising C. to commit the theft, before the commission of said offense, is good and need not allege that H. was a party to the contract of hire. Davidson, P. J., dissenting.

**2.—Charge of the Court—Fraudulent Taking.**

Where the court in its main charge instructed the jury that before they could convict the accomplice that they must find the principal guilty of the theft of the horses, it was not error to refuse to give a special charge that if said principal took the horses for the purpose of stealing a ride, to acquit the accomplice who was on trial.

**3.—Same—Guilt of Principal May Be Shown.**

The statement of the principal to the party from whom he hired the horses alleged to have been afterwards stolen by him were admissible in evidence to show the guilt of the principal, and it was not necessary that the court should so limit this testimony, as it could not be used for any other purpose to affect the accomplice.

**4.—Evidence—Circumstantial Conclusive, When.**

When circumstantial evidence is of that conclusive character leading on the whole to a satisfactory conclusion and irresistibly points to defendant's guilt to the exclusion of every reasonable hypothesis, it is sufficient to sustain the conviction.

Appeal from the District Court of Parker. Tried below before Hon. J. W. Patterson.

Appeal from a conviction of theft of horses; penalty, two years imprisonment in the penitentiary.

The testimony for the State shows that C. H. McCarty, who was charged as the principal in the indictment, hired a two-horse buggy from Henry Walker, the agent of John Gilbert, who kept a livery stable, saying he wanted to go to take his sister to Granbury, Texas, and

would be gone two days. The appellant was not with him at that time, but was seen later riding in the hired buggy with McCarty. They did not return, and after some twelve or fifteen days the team was found at Weatherford, Okla., where defendant and McCarty were arrested. The State's witnesses testified to several circumstances which pointed to the fact that defendant acted with McCarty in obtaining the team, but there was no direct testimony that he in any way participated in the taking. Appellant's sister took the stand and testified that McCarty and defendant came to Weatherford, Okla., in the team alleged to have been stolen and said they had hired it, and that they laid no claim to it, nor offered to dispose of it. Defendant was about 22 years old.

*Preston Martin,* for appellant.—Appellant could not be guilty under this article of the statute unless he was a party to the contract of hiring, or was known in the contract of hiring, or was known in the contract by Walker at the time he parted with his possession of the horses and delivered same to said McCarty. Calkins v. State, 29 S. W. Rep., 1081.

On the question of admitting McCarty's statement to Henry Walker: Arnold v. State, 9 Texas Crim. App., 435; Sims v. State, 10 Id., 131; Crook v. State, 27 Id., 198.

*Howard Martin,* Assistant Attorney-General for the State.

BROOKS, JUDGE.—Appellant's punishment was fixed at two years confinement in the penitentiary, under an indictment charging substantially, as follows: That C. H. McCarty, on September 22, 1903. * * * "having possession of two horses then and there the property of one John Gilbert, by virtue of his contract of hiring made with one Henry Walker, who was thereunto duly authorized by and acting for the said John Gilbert, as the agent and employe of the said John Gilbert, did then and there unlawfully and without the consent of said John Gilbert and Henry Walker, and without the consent of said John Gilbert and Henry Walker, and without the consent of either the said John Gilbert or Henry Walker, fraudulently convert said horses to his, the said C. H. McCarty's own use, and with the intent to deprive the said John Gilbert, the owner, of the value of the same; and the aforesaid grand jurors further state upon their oaths as aforesaid that on or about the above named day and date, in the county and State aforesaid, one Joe Harrold, before the commission of said offense of theft by said C. H. McCarty, as aforesaid, did then and there fraudulently advise, command and encourage the said C. H. McCarty to do and commit the said offense of theft, as aforesaid, he, the said Joe Harrold not being personally present when said offense was committed by the said C. H. McCarty," etc. Appellant moved to quash the indictment because it was not alleged therein that appellant was a party to the contract of hiring. We hold that it is not necessary to allege in the indictment that he was a party to the contract of hiring. The indict-

ment does allege that he advised and encouraged the principal McCarty to commit the offense. We accordingly hold the indictment is good.

Appellant insists that the court committed error in refusing his requested instruction number 3. The substance of this special charge is that if McCarty took the horses for the purposes of stealing a ride with them, but not with intention of appropriating them, appellant would not be guilty. This charge is correct; but the evidence in this case does not raise this issue. Furthermore, the court's charge was sufficient to protect appellant's rights, even conceding that issue is in the case, since the court instructed the jury, among other things, that before they could convict appellant they must find that McCarty was guilty of theft, and that he appropriated the horses in Parker County.

Appellant further insists that the court erred in not instructing the jury that they could not consider the statement of McCarty, made to Henry Walker at the time the contract of hiring was made, since said statements were made in the absence of appellant. It was not necessary to so limit this testimony, since the statement of the principal, McCarty, to the party from whom he hired the horses, was admissible as original evidence to show the guilt of McCarty, and the jury could not appropriate said testimony for any purpose except to show the guilt of McCarty.

Appellant strenuously insists that the evidence is insufficient to support the verdict. While the evidence is circumstantial, it is of that conclusive character leading on the whole to a satisfactory conclusion and irresistibly leading one to believe in appellant's guilt, to the exclusion of every reasonable hypothesis. The judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (Dissenting).—I can not agree with the conclusion of my brethren affirming the judgment. The indictment charges and the jury convicted appellant as an accomplice to the theft committed by McCarty. McCarty was tried and convicted, and this indictment charges him with the theft by conversion after obtaining the property under a contract of hiring. It was framed and conviction obtained upon the theory that Harrold was an accomplice to McCarty, in that he advised him to obtain the property subsequently converted by a contract of hiring from the alleged owner. Article 877, Penal Code, proceeds upon the theory and provides for the punishment only in case where the property is obtained upon a contract of hiring and borrowing, and where the fraudulent intent and conversion occurs and is carried out after obtaining the goods or property. If appellant advised McCarty before McCarty obtained the horses and buggy from the livery stable to obtain them under a contract of hiring for the purpose of a subsequent appropriation, the offense would not come within the purview of article 877, because the agreement between them to obtain the property would be in pursuance of a fraudulent intent formed in the minds of both before the contract of hiring was made,

and with the view that the contract was to be made for the express purpose of getting possession of the property and appropriating it. This character of case is not covered by article 877, because it only provides a punishment for the conversion of the property where this conversion and the fraudulent intent and purpose was formed subsequent to obtaining the goods. In terms the allegations in the indictment brings the case, if truthfully stated, strictly and literally within the general definition of theft, and more especially within the express terms of article 861, Penal Code, which provides that "the taking must be wrongful, so that if the property came into possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft; but if the taking, though originally lawful, was obtained by any false pretext, or with intent to deprive the owner of the value thereof and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete." Taking these two statutes together, it will be discovered that, under article 877, Penal Code, the taking need not be wrongful; in fact that article is based upon the proposition that the original taking is not wrongful, but that the property comes within the possession of the taker by the use of lawful means—a contract of hiring for instance, and then subsequently is appropriated. That article denounces the punishment of theft, that is, it provides a punishment for the theft of property by conversion after the property comes into the possession of the taker by lawful means. Article 861 provides that under that character of case there can be no punishment, but if the goods was obtained by false pretext, or the intent to deprive the owner of the value thereof, then the theft is complete. The difference being that, under article 861 the unlawful or fraudulent intent must exist at the time of taking the property or securing its possession, while under article 877, the intent to fraudulently appropriate it must be conceived after possession lawfully obtained. The indictment charges an agreement between the parties; at least advice of appellant to McCarty to obtain the goods by false pretext with the existing intent to appropriate it at the time the property is taken. If appellant advised McCarty, before the contract of hiring was made, to make the contract for the purpose of securing property to appropriate it, then he would come within the terms of article 861, and could not possibly be convicted under article 877. The allegations of the indictment preclude the offense under article 877, if they are true; and for the purpose of a demurrer they are taken to be true. My brethren, in order to sustain this indictment, have held that an agreement between McCarty and Harrold in advance of securing the property would authorize a conviction under article 877. From this conclusion I most respectfully dissent. I am of opinion that the allegations of the indictment show most positively that the provisions of article 877 do not apply to the case set out in the indictment. The other questions in the case under the view I take would also require a reversal of the judgment, for those matters were injected

into the case by the State and permitted by the court upon the theory that the agreement to steal the horses and subsequent appropriation of them came within the terms of article 877. This is not a case where the party hiring the horses formed the subsequent intent to appropriate that property, being thereunto advised by an accomplice after obtaining it. If appellant, after McCarty had obtained the property, had advised him to appropriate it, he would be an accomplice to the theft, if he was not being present at the time of the conversion. If he had advised McCarty, after McCarty was in possession, to appropriate the property and was present at the conversion he would be a principal. But all this must have occurred after McCarty had obtained possession of the property by virtue of the contract of hiring. It could not precede obtaining possession of the property under article 877. This case should have been reversed and the prosecution dismissed.